Based on the calendar today is Sparta Commercial Services versus DZ Bank, numbers 16, 432 and 494. Thank you. Good afternoon. May it please the court, I'm Dan Brescher, attorney for the Plaintiff Appellant and Cross Appellee, Sparta Commercial Services, Inc. Several points that I'd like to address, and I'd like to start with the citation that we made to the Carvel case that had been decided by this court with regard to whether or not a breach of the duty of good faith and fair dealing could be found against the defendant that acted even within the bounds of its discretion, but would be in breach if it acted unreasonably. The defendants did not respond to that citation, and I would hope that this court would find in that regard. Could you point out which specific findings of the district court were clearly erroneous with respect to that particular claim for the breach of the covenant? The court did not, the other point of this appeal is that the court did not make a finding that I had requested with regard to the 30-day extension request, which was submitted purportedly on behalf of Sparta Commercial Services, Inc., How was the fact that the man on the other side who had your account trying to help you out suggests to his employer that if they are not ready to do a full extension, they might be willing to do a 30-day extension, during which time you could do other things? How can that possibly be something that is harmful to you when you don't even know of it, and could have had it occurred, been helpful to you? Yes, Your Honor, that is exactly the point of our appeal, is that we needed to know about it, not knowing about it. Why, if somebody who is your account person on the other side thinks that what you would normally be getting is not going to be gotten, and assume that you don't have a right to know that they are inclined not to give it to you, that's a different issue, then comes up with something that might be helpful if it ever came out, which they then also reject, why is that something that you have a right in law to know about? We had a right to know that the one-year extension was not going to be granted, which would have allowed us to try to take down a portion, a $250,000 or more portion. That's a different question. The question of whether, in their thinking about things, they were very much inclined not to give you the one-year extension, whether in good faith, people who are dealing with each other, and where you have a right to an extension if certain things are done, they have a right to tell you, you have a right to have them tell you, hey, we're inclined not to do it. I'm not sure that I've found any New York case that suggests that that's a breach of covenant of good faith, but that's a different argument from the one you were making before, that you somehow had a right to know that they were thinking about 30 days. The reason we needed to know about the 30 days was, had we been informed that that's where they were going, we would have moved the money into the firm from Mr. Little, who had $10 million in his Roth account and was prepared to fund it. But you could do that in any event and thereby automatically have a right to extension. And in a way, all that seems to me is going on in this case is that you were gambling that they would give you an extension even if you didn't exercise, do the things, which would have given you, assuming you could have, an absolute right to an extension. And you have a right to make that gamble, but why do you have a right to say that they should have told you ahead of time that that gamble was a bad one? Your Honor, there's one misperception there. If Sparta had taken down, let's say, $250,000 or more within the 20-day period that had still been left, they wouldn't have had an automatic extension after that. The bank could have automatically terminated the agreement, had a run-out period over time, and Sparta would have then had the opportunity to find another lender. The problem here was there was an exclusivity provision. There were two exclusivity provisions within the agreement, and Sparta was bound by those. That's one of the reasons when you're running near the end of the road and there's a cliff, there's some obligation on the bank in order to help us not go off the cliff, which when that thing terminated without being taken down, Sparta suffered very serious damages. The problem was knowing that it's about to expire, knowing that you're not going to give the one-year extension, not telling Sparta that, not allowing them the opportunity to draw down something on the credit line, not telling them even when the 30-day was withdrawn until just shortly before the— I don't doubt for a moment that you were injured by this. I don't doubt for a moment that you were injured, that the fact that this happened caused you great trouble. My problem is where is there a duty on their part to tell you what they're thinking about an extension is when there are terms that don't require an extension that suggest an extension will have these and these consequences or these and others? I mean, in most business dealings, you know, extensions are sometimes given and sometimes not. We didn't want to know their thinking. We wanted to know an act that had taken place. An extension request on behalf of Sparta was submitted without Sparta's knowledge or approval. The agreement doesn't allow for that. This was a totally internal matter to the bank, though. Well, a request for an extension— This was within the bank. But without— This was a bureaucratic communication from one division to another about it was apparently trying to seek flexibility on Sparta's behalf that the bank was under no obligation to give. So it was an internal communication. So where, following up on Judge Calabresi's question, where does a duty to disclose an internal communication arise? Only when there's a decision that was made. And once it was decided no extension was being given, even when they withdrew even the 30-day extension, still no telling of Sparta until just a few days before the termination. Was there a duty to tell you before that no extension would be given? Was your contract with them something which said, you must tell us 30 days before if you've decided not to give an extension? You must tell us 60 days before if you're inclined not to? Was any of that in the contract or readable into the contract at the level we're not doing it would be breaching good faith? There's nothing written in the contract that requires an answer from the bank. But once it makes its decision, it would be good faith to tell the borrower. Why do you have to tell the borrower ahead of time when conditions may change so that they change their mind? And especially when they are internally considering something which may cause something to happen during which they can change their mind. That's what's going on with the 30 days. Your representative was saying, okay, you've decided against them, but do them a favor and give them an extra 30 days during which time I can come up with other reasons why you should give it. The argument I would make is that there was lulling. There were conversations. We're going to try and get you the one year. There was no telling of it. We were never informed until years later about the 30-day extension. This lulling, although we were ready to take the testimony, shows that Sparta was ready to take down, had satisfied the financial requirements. This is an e-mail from Tucker that's in the record on November 25th, A546.14 and 15, in which he says that the company has satisfied its financial conditions or is ready to satisfy its financial conditions. The whole point here was there was a waiting by Sparta, and that waiting was known by the bank, and that was based on communications that the bank voluntarily made. They didn't have to. But once they said, Supposing that instead of having an ASG group and a KRY group, the bank had simply had one guy, a loan officer, who was the person, the point man, on this loan. And as the point was approaching where the bank would be within its entitlement under the agreement to cut the thing off, he said, Well, you know something? I think I'm going to wait 30 days before making a definitive decision to cut this off. Are you saying that the bank would be under obligation to, under that contract, for him to have given you notice that he was willing to do that? No, Your Honor. Then why is it different just because in this bank it's broken down into two groups, one of which advocates within the bank on behalf of the potential lender, and the other makes the final decision as opposed to just having one person who is debating the thing in his head? The difference here is that the bank had made a decision, not I'm going to wait, in addition to which one part of the bank is telling them, Wait, no decision has been made. So they're lulled. That's the argument. Thank you. I think we have the argument. You've reserved two minutes for rebuttal. Mr. Conlon. Thank you, Your Honors. With respect to the point that Mr. Brescher just made, there was no 30-day extension given. It was purely a matter of internal deliberation at the bank. It was done in the hopes of accommodating the extension request that D.C. Bank made. With respect to the three issues that are on appeal by appellant, the first is that the district court improperly denied a motion under Rule 15B to reinstate a claim for negligent misrepresentation. That claim would not have been procedurally proper. 15B only applies to unpled claims. Negligent misrepresentation claim was pled, was dismissed. That being said, Judge Stanton, although not explicitly, clearly, implicitly considered the negligent misrepresentation claim, not clear whether it was under 15B or under some other rule, where he made an explicit finding that there was no negligence of any sort by the bank in its dealings with SPARTA or its processing of any extension request. With respect to the exclusion of plaintiff's expert, Mr. Gack, it is fundamentally incorrect, the representation that is made on appeal, that Mr. Gack's testimony was in some way relevant to the issue of the 30-day extension request, the internal deliberations. Mr. Gack's expert report did not address that at all. The issues and facts around the internal deliberations around the 30-day extension request were disclosed to plaintiffs months before trial. The relevant internal documents were produced, I think, nine months prior to trial. It was the subject of questioning at deposition of the D.C. Bank witnesses. It only became an issue in the midst of trial when the prior allegations, the factual predicate of the claims, were shown to be completely false. There was the allegation that there had been a promise of an extension, an instruction not to draw down, and a detrimental reliance on that. The sworn testimony in support of those claims was disproven prior to trial and abandoned at trial. The final issue on appeal with respect to the principal claim is the standard of review as to Judge Stanton's findings of fact. Appellant would have this Court undertake a de novo review of Judge Stanton's determinations of credibility, his review of the documents submitted in this case. Judge Stanton, in every instance where Sparta's witness testified and D.C. Bank's witnesses testified, he found the D.C. Bank witnesses credible, the Sparta witnesses not credible. The weight of the evidence was clearly in favor of the defense. With respect to the counterclaim, we respectfully submit that Judge Stanton was mistaken as a matter of law, that with respect to our claim for indemnification of attorney's fees, it's provided for under- I have trouble with your position on that because the way I understand it, you are seeking such a broad reading of the indemnification provision that it would mean that even if Sparta had won in this lawsuit and found a breach and damages were awarded against the bank, then Sparta would have to indemnify the bank for the damages and for related fees. That you're saying that any and all liability reached so far as to cover your litigation costs no matter what the outcome of litigation between the two. And I wondered if that is correct or if I'm incorrect, why? No, I don't think that would be the case, Your Honor. It's certainly not the case in this litigation. We did prevail. But the problem that the presiding judge is pointing to is that the clause you are pointing to is a broad, overwhelming clause which if read literally would cover even situations which are absurd. And this court and New York courts even more, which after all is what is relevant, have been extremely reluctant to grant indemnification between the parties on such broad clauses. They will grant them readily where it is a third party that comes in because of this and read those broad clauses that way. But when it is between the parties, they want very specific requests, requirements of indemnification, which this clause doesn't seem to give. Your Honor, with respect to that point, I think the same point could be made even for a third party claim. If some conduct of D.C. Bank instigated a third party claim against Sparta and then D.C. Bank was somehow brought into that. That may be true, but nevertheless, with respect to third parties, New York has said there may be reason to allow indemnification even in a victorious suit. But we don't like that when it is between the parties because the American rule is generally you pay for your own counsel and any deviations of it has to be specific. Your Honor, I would submit that the court always has the right and obligation to read out an absurd result, but I think in this instance you can still preserve the general provision and exclude the absurd result. I have nothing further, Your Honor. Thank you. Mr. Brescher, you have two minutes for rebuttal. Thank you, Your Honor. I would just refer to the Bridgestone case, which I'm sorry. I would refer to the Bridgestone case, which dealt with the requirement that it be unmistakably clear and I would point to the provision in the agreement that apparently they're citing for indemnification, which talks about a breach of an applicable law with respect to the collateral, whatever that means. It's rather vague. Whereas in the clause that preceded it that referred to the specialty funding, the entity, SPARTA funding, the special use purpose, special purposes corporation that was set up that never was operational, that 11.1A sub 16 talks about any investigation, litigation or proceeding related to this agreement. So with regard to the other entity that wasn't involved in this funding, they were trying to say that if there was an action based on this agreement, they were going to be indemnified. But with regard to SPARTA commercial 11.2, which is the section that referred to SPARTA, they didn't use that same wording at all. They talked about anything that would regard to applicable law, whatever that means. Thank you. I think we have the arguments. I think we have the arguments. That concludes our calendar for today. We have three more cases that we're taking on submission. United States v. Marmolive, Creshe v. Mohawk Valley Community College and United States v. Lopez. The clerk will please adjourn court.